Good morning, Your Honors. May it please the Court, my name is Michael Faber. I represent Appellant Doug Dowie. I'd like to reserve four minutes for rebuttal, if I may. I'd like to begin by addressing what I consider to be the most important issue here, and that is the Sixth Amendment violation represented by application of the Thompson Memo. I think the Second Circuit in Stein got it right. Here, and it's alleged in the complaint, and by the way, forgive me, but it is important to reiterate that we are here on an appeal from a 10b-6 motion. It was alleged in the complaint, 12b-6, excuse me, thank you, that Fleishman-Hillard was paying the attorney's fees. They paid him after they terminated his employment. They paid him after they knew that he was being represented by counsel. They paid him after the alleged statement by counsel that it was going to embarrass them with revelations about their other wrongful conduct. Were criminal proceedings during this litany? The criminal proceedings had begun against John Stoddard, who was Mr. Dowie's subordinate. No, against your client? They hadn't begun against my client. They began... Oh, this was just, he was a normal employee, not under a cloud. Oh, he was definitely under a cloud, Your Honor. Not criminal, not an indictment, though. He was under investigation by the L.A. County District Attorney and the U.S. Attorney. But no indictment. No, the indictment happened in June of 2005, and that was the triggering event which cut off his attorney's fees. Right. And that's important because that's exactly what the Court focused on in Stein. The fees policy that KPMG had, that they adopted when the investigation began, is remarkably similar to what we have here, that they would pay the defense fees for the employees unless and until the employee was indicted. When that happened, they would cut off the fees, and that's exactly what happened with respect to Mr. Dowie. Let me ask you something about the present status. The criminal case, of course, is over, and we know the result of that, right? It's on appeal in this circuit. All right. Has the criminal case been decided yet? The appeal? Yeah. No, Your Honor. What's holding that up? What has it been, about three or four years now? I don't represent Mr. Dowie. I know that Mr. Dowie's appeal is fully briefed. It's been joined with Mr. Stoddard's appeal. Mr. Stoddard has not filed an opening brief, apparently. A motion has been filed with this circuit to permit remand for the purpose of bringing a motion for new trial based on newly discovered evidence. But I'm representing that to the court based only on my reading of the motion. Is that in Stoddard's case or in Dowie's case? Stoddard filed the motion. Dowie joined. I see. But Dowie's out on bail pending appeal, correct? That is correct. Yeah. He's not in custody, right? He is not in custody. And … Well, is there any reason that this case need or need not be decided now? I don't think that there is urgency on this case, Your Honor. And I think that in the event that the conviction is upheld, in my view, it will not change the legal arguments that we are bringing now. We're bringing these arguments based on the fact that the conviction … Well, I think you'd be in a better position if it were reversed. I'd be in a much better position, yes. Okay. Something to be proudly wished for. So what's the heart of your … Why did the district … on this 12b-6, why did the district court err? The district court granted the 12b-6 motion because of the conviction, pure and simple. And since you bring that up … This is an indemnity statute, correct? Under Labor Code 2802. However, let me … They don't have to pay, you know, it's not a defense. It doesn't provide for payment of defense costs, does it? It does not provide for payment of defense costs. But the point that Your Honor raises is a very important one. Because the Sixth Amendment issue, which is raised by Stein, is … it's intertwined with, but it's also very distinct from the Labor Code 2802 issue. The constitutional implications of the Thompson Memo and the way the Thompson Memo was applied, in my view, are distinct from Labor Code 2802. So who's denying the Sixth Amendment right? Well, if you follow Stein, Fleischmann-Hillard engaged in essentially state action. They did? The same way that KPA … They did? How could they engage in state action? I thought it was an advertising company. They were acting as an agent of the government, and this is exactly what the Second Circuit found in Stein. There's no findings like that here, though. Did you allege that in the complaint, that they were acting as an agent of the government? We allege that they terminated the fees. We allege very specifically that they terminated the fees because they were complying with the Thompson Memo. And this is exactly what the Second Circuit discussed, Your Honor. The Second Circuit held that KPMG engaged in state action, even though KPMG is an accounting firm. And the Stein court, both the district court and the Second Circuit, were very explicit about that, that they acted as an arm of the government when they implemented the Thompson Memo on behalf of the government in order to deprive the employees of attorney's fees that they otherwise would have had. Well, I guess that's the question, then. Would he otherwise would have been entitled to fees? Well, yes, they would have. How do you read the statute, then? It's not under the statute, Your Honor. It's under the policy and practice of Fleischmann-Hillard. We know that because … So you don't no longer rely on the statute? I rely on the statute separately. Separately? Separately. And it's important … So what policy and practice do you rely on of Fleischmann-Hillard that was alleged in the complaint? Well, that they were, in fact, advancing fees on behalf of Mr. Dowie and on behalf of Mr. Stotter. So they mean they're stopped from … Terminating. Yeah, from terminating. They're certainly not stopped to do it unless they do it because of the Thompson Memo. All right. And that's the issue that Stein decided. Basically, Your Honors, I think that if the Court is going to decide that Stein was rightly decided by the Second Circuit, then it must find that there was a Sixth Amendment violation here and that in this case the attorney's fees must be indemnified.  Your Honor, the cause of action under the Labor Code is one cause of action. Equitable indemnity would be the Sixth Amendment violation. Under the Labor Code, and I'm losing my rebuttal time, but under the Labor Code, the employee has a right to be indemnified for all costs and expenditures incurred in the course and scope of his employment. Now, there is a disjunctive phrase under Labor Code 2802A that says or if they were incurred following the direction of the employer unless he believed them to be unlawful at the time. But we don't need to get to the second part, the or part. We're going on the first part. As long as they were within the course and scope of his employment, and these were inarguably within the course and scope of his employment, then he is entitled to indemnity. So if the Ninth Circuit upholds his conviction for conspiracy and I guess it was wire fraud. Wire fraud. So let's just look at the wire fraud, which has a knowing element to it, I think, if I'm not mistaken. I'm not a criminal law expert, but I want to see. Any argument under the statute if this conviction is a fraud? Only if the right to indemnity was being brought on the part of the Section A that follows or. But we're not on the or part. We're on the first clause, if you will. You better reserve the balance of your time for rebuttal. I would like to do that, Your Honor. Thank you. Good morning, Your Honor. Tony DiCorso for Fleischman Pillar and Omnicom. Stein has nothing to do with our case. Judge Feist dismissed this under 12B6 precisely because of the conviction, and Your Honor is correct. The wire fraud involved under the Ciccione case, intent, an illicit goal, something you know is fraudulent, and the conspiracy under the Boone case, you have a specific unlawful objective that you intended to achieve. So the conviction in both respects established that the exception to 2802 indemnity applied. What if this conviction is reversed? I don't think it will make a difference. The only thing that would get Mr. Dowie, I think, back to square one perhaps would be if the government declined after it's reversed or if he's retried and he won. And that's because this is an indemnity, not an advancement statute. Well, if it's reversed, he's prevailed. Well, it wouldn't necessarily be a finding that shows that he did not have the belief that his actions were unlawful. No, but you're saying we shouldn't wait around at all. The fact that it wasn't proven beyond reasonable doubt wouldn't mean that he didn't have the belief. I don't think it would necessarily end the issue. Wouldn't that be a tribal issue of fact? I mean, couldn't he prove it to a civil jury? It could be a tribal issue of fact. I mean, yes, he potentially would have another opportunity if it got overturned. But, again, what he's been relying on with Stein has nothing to do here precisely because Stein, a Sixth Amendment violation in a criminal case were, of course, in a civil proceeding. He never pled a Sixth Amendment violation. I don't know how you would do that in a civil case here. We were pre-trial, excuse me, post-trial, in fact, post-conviction, whereas Stein was pre-trial seeking advancement. The other key problem, though, is that the complaint only pleads that Fleischman was trying to comply with the Thompson Memorandum, as any reasonable corporation might at the time. The complaint does not bear any similarity, let alone remarkable, to Stein because the Second Circuit affirmed the judge in Stein precisely on grounds that not only was the Thompson Memo, in fact, but also there had been sustained government activity that was they were pressuring KPMG not to advance fees, to depart from their policies. There was no such finding here. In fact, Judge Feist, to the contrary, found that Mr. Dowey had essentially brought upon himself the cutoff in fees. There's no allegation in the complaint that there was any such pressure here? No. All it talks about is following the Thompson Memo. And again, we have to realize, if we look at the Sixth Amendment, Mr. Dowey's been complaining that our company funded his defense until the indictment, and that was quite a period of months, and then cut him off afterwards. Well, even under the Sixth Amendment, there was no right to counsel pre-indictment. So he still had, Judge Feist correctly realized, a windfall. He had a very top-notch law firm provided at our expense for the months that he was under investigation. And then when he was indicted, the fees were cut off, as he alleges. But he was in a far better position than most defendants, and if he didn't want to remain with Gibson, Dunn, and Crutcher, he could have changed law firms, could have tried to get a public defender. He alleges he was poverty-stricken at that point. Now, he has a number of other claims besides his statutory claim. Correct. So if his conviction is affirmed, what do we, what about his non-statutory claim? The rest of them I don't think makes any difference. The fraud and the promissory estoppel, as for the reasons Judge Feist found and I just alluded to, there was a windfall, not a harm in providing him counsel pre-indictment. The equitable indemnity to which counsel just alluded, that theory requires that the beneficiary not have engaged in any active fault himself. It's some sort of a shifting mechanism. But here, even if the conviction were overturned, that wouldn't mean that by a preponderance standard in another proceeding that it wouldn't be the case that Mr. Dowdy had intentionally engaged in bad faith conduct, the fraud against the DWP and others. But there's no finding that is before us on that issue now, right? It would have to go back. You mean if the conviction were overturned? Right. If the conviction were overturned, right, the only, there was a settlement, so there was no finding in the civil case and there wouldn't be a finding in the criminal case. That's correct. But it still would be the case that in any event, Mr. Dowdy didn't rely on the supposed misrepresentations because he started incurring the expenses of his law firm himself after he alleged that Fleishman Hilliard made clear it was no longer going to pay. So he didn't rely on this statement. It's not like we waited until the end of the case and said, oh, by the way, we're not going to pay these bills, and he's been due. He knew when he was indicted, he alleges in the complaint, it became immediately clear Fleishman Hilliard would not pay those fees, and then he continued to work with the same law firm. Do you have a position on whether we should defer submission pending decision in the criminal case? I don't think there's any need to defer to that. It's been pending quite a long time. This case has been pending a long time. Most of this case won't turn on that decision, and it's not clear to me even if it were to get overturned. As I said, I don't believe that would instantly resolve our issues in any event precisely because we have advancement versus indemnity, and I don't think it would resolve issues here. So if the criminal case came down favorable to the defendant, would he have an independent class of action that he could file originally, despite the fact that we had decided this case the way we were adverse to him? Oh, if this case were resolved and then, excuse me, the criminal appeal reversal? Yeah. Would he then have another shot? I've never seen a case like that. I suppose he would file a claim saying that. Well, why would this case be reshooted against him? Well, part of Judge Fee's decision was without prejudice. So some of those counts were dismissed without prejudice. So he could refile some of those if he could get a lawyer to take it. No, he filed a he declined leave to amend. So I believe that's all water under the bridge. On all counts? Well, several counts. On the main count, I think he did. It was with prejudice. 2802 was right, with prejudice. And I think he declined leave to amend on several others. And he dropped, abandoned one on appeal. That's a kind of an academic discussion at this point. We can wait and see. Yes. But we would change the landscape if the Ninth Circuit reverses his conviction. Well, again, given what his argument as to 2802 is, we wouldn't have the conviction to bring us right within the exclusion for an unlawful act. You believe unlawful. But there's nothing, A, that 2802 has never been applied to a criminal case. Well, it's a different issue. Right. And it wouldn't be clear that no case has ever said that on a reversal in a criminal case that somehow that amounts to a finding that would prevent the employer from relying on the same exclusion because no case has ever applied a statute in a criminal case. And I think we still would. All you have here, Judge Fease is pretty clear why he granted the 12B-6 on the statutory claim. Flat out. On the exemption. Flat out. And so if that's eliminated, it seems to me to have a whole new ballgame. As to that claim. A number of issues have to then be decided, whether the statute even applies to criminal proceedings. Yes, that would have to be resolved. And that's, you know, that's something the district court would have to address in the first instance. Right. And we probably would be getting back to whether or not the exemption applied again. But I think the rest of the claims fall for other reasons that we made clear. I think Judge Fease was correct. But, again, Stein really sheds no light at all on this case. It just has nothing to do with creating a private cause of action against the employer, let alone the government, for pretrial fees contrary to California policy. That would be the last point I want to make. We've tried to make clear that Mr. Dowey's arguments in many respects are contrary to the Corporation's Code laws of California, where he worked, Delaware, where Fleishman is based, and even New York, where Omnicom is. And that is corporations cannot use their funds to indemnify intentional bad-faith acts. And in the case of criminal conduct, conduct where the defendant should have reasonably understood he was breaking the law, in those instances, they're all affirmatively disqualified corporations from indemnifying. Okay. Thank you, Mr. DePriest. Two points, Your Honor. Thank you. Contrary to what counsel suggests, the Stein case is very much at issue here, and it was decided only in August of 2008, which is after the opening brief actually was filed here. In Stein, they talk about the fact that the pressure that was brought to bear is implicit in the Thompson Memo itself, and that any corporation represented by White Collar Defense Counsel knows what the Thompson Memo requires of assistant U.S. attorneys. So it's not relevant to have the assistant U.S. attorney saying, cut off the fees or we will indict you. It's the Thompson Memo itself which is the pressure. Finally, the Labor Code, again, speaks of in the course and scope or in the discharge of his duties or of the obedience to directions of the employer. Here, we're talking about in the discharge of his duties. In every case that is decided, 2802, every single case says that there is one test for its application, and that is course and scope of his employment. And we have that here. What we do not have is an allegation that he was acting at the express direction of his employer, which he knew to be unlawful. That's a second clause in 2802A that we do not rely on. Thank you, Your Honor.  Thank you. Submitted. Why don't we defer submission? We won't have to carry it as a case. Well, shoot. Okay. Let me just, let me just. He's right. I think we'll hold off on, we'll issue an appropriate order whether we're going to defer submission or not. So the clerk, maybe we should just. Yeah, we can tell the clerk what to do. Yeah. You'll hear from us what we're going to do. Thank you, Your Honor. So it's still pending. Yes. It's not submitted yet. It's not submitted yet. Understood. Thank you. Thank you. Yeah, it's just a statistical thing. We have to treat it differently. Right, right, right. I agree. United States v. Moran.
judges: Goodwin, Beezer, Paez